Good morning, Your Honours. May it please the Court, my name is Haley Yussman for Appellant George Travis. Our argument today is twofold. First, we are asking you to find that the evidence is insufficient to sustain George Travis' conviction for residential burglary, or the evidence, taken altogether, does not show that Travis intended to steal. Alternatively, we are asking you to find that George Travis' trial counsel provided constitutionally ineffective assistance, as he made at least seven grave mistakes throughout the course of proceedings. We are also happy to answer any questions Your Honours might have about Travis' excessive sentencing claim. To begin, none of the testimony or evidence suggests that Travis intended to steal from Brunton. In fact, the evidence introduced at thoroughly established that Travis believed Brunton's safe was his for the taking. Indeed, at the time of the incident, Travis had an existing relationship with Brunton, who volunteered with a local non-profit helping unhoused people, of which Travis was a member. Travis had even slept in Brunton's backyard and garage on several prior occasions. So, on April 12, 2024, Brunton held a yard sale, and he left a woman named Melissa in charge, and she invited Travis to join her. So, the two continued to host the yard sale for the entire weekend. When Brunton returned, he decided he wanted- Can we stop you for a second, please? During their hosting of the yard sale, where was the safe located? So, it is debated by the parties where the safe was located during the yard sale. Brunton does maintain that it was kept in his home. However, Travis and other witnesses say that it was kept outside, and there is no video or photo evidence that was introduced at trial that actually shows the safe indoors. So, the fact that multiple witnesses say that it was kept outside, and that they believed it was Travis' for the taking, tends to establish that the safe was probably kept outdoors with the rest of the free items in the sale. So, then, it's a question of fact, and that's for the trier of fact to determine who to believe, right? Certainly, yes, and there has to be a lot of deference, I understand, given to the trier of fact. However, there has to be more as well than a slight suspicion raised that someone could have proof, whereas a reasonable trier of fact could have deduced beyond a reasonable doubt that a felony occurred. So, our argument today is that taking all of this evidence in tandem, including the fact that there is no photo or video evidence showing the safe inside, and that most of the evidence tends to show it was outside, that a reasonable trier of fact could not have come to that conclusion. Then, what about the fact that there were and jewelry? Typically, when one is giving away a safe, they don't leave their personal items, especially their credit cards, in it. Certainly, Your Honor. So, as to the credit cards that were found about a month after on Mr. Travis' person, at trial, it was never actually proved up whether those credit cards specifically came from the safe. So, at this point, it would only be speculative to say that those cards specifically came from the safe. And, in terms of the jewelry and other items, Mr. Brunkin actually had a long history, which was deduced at trial, of giving away items and shelter and other goods to people in the homeless community of which Travis was a part. So, under these particular factual circumstances, it would not be beyond the reach of believability to think that he would intend for somebody in that population that he devoted his life to helping to have some of those valuables for their keeping. So, what you're suggesting is if Mr. Travis didn't steal the safe that had Mr. Brunkin's credit cards in it, he may have stolen the credit cards from Mr. Brunkin later? So, that's not what I'm suggesting. All I'm saying is that it would be too speculative to say exactly how he got those cards. Again, they had an existing relationship prior to this incident. So, in terms of how he could have gotten those cards on his person, whether he was authorized to buy things for Mr. Brunkin, we just don't know because that's not in evidence. So, indeed, several witnesses testified that they believed the safe was one of the free items up for grabs and that Brunkin intended for Travis to have the safe. And, like I said earlier, none of the evidence, including the video evidence, showed that the safe was kept inside or otherwise separate and apart from the other free items, despite Brunkin's insistence to the contrary. Do you have a theory as to why Mr. Brunkin, if he had intended for the safe to be out on the yard sale, as part of the yard sale, and he intended for Mr. Travis to have the safe, why is he then complaining that the safe was stolen by Mr. Travis now? Well, again, I think that would be too speculative for my position to theorize on at this point because I don't have enough record and evidence to know about why he might have changed his mind about that. But the fact remains that from the facts that we do have in evidence, it is more reasonably deduced that he did intend originally for Travis to have the safe and that maybe something changed with the relationship that we are not privy to, but ultimately that is not in the evidence for us. Well, the driver of the truck that Mr. Travis utilized in going to pick up the safe, didn't he testify that when Mr. Brunkin came around the corner, Travis told him, get out of here, let's go? Yes, he did testify. Why would he do that if he had permission to have the safe? Well, I think here what's important to note is that in terms of the actual record, at that point, the prosecution actually asked Dunson, that witness, did you believe anything was amiss at that point? Basically, did you think he was stealing? And that witness said no. So because we're not privy to the tone of how those comments were made, but it seems based on his testimony and what he said, saying that he did not believe anything was being stolen, that he simply thought he was being given an order to just keep driving. Again, because I was not there to listen to the exact tone in which that was said, I can only take what is deduced from the record in that case. This was a jury trial, right? Yes, correct. This was a jury trial. So jury could have questioned some credibility of Mr. Travis, based on all of what I've just pointed out. Certainly, certainly could have questioned the credibility of anyone, but as to our argument here today, we think that the credibility of Mr. Brunkin was actually quite questionable here at trial. We didn't necessarily, we don't get to make that determination. The trial or the trial effect did that. So whether we think that Brunkin's credibility was at issue, doesn't really matter based on the deference that we must show the trial, the jury's decision. Right. So we get around all that. Sure, sure. That is true. But for example, in People v. McCombs, this court indeed reversed a defendant's burglary conviction because the did little more than raise a suspicion of the defendant's guilt. And here too, what our argument is, is that at best, this evidence raised a slight possibility that Travis committed a felony. But as McCombs says, that is simply insufficient to sustain a conviction. All the more likely here is that he was intending to take an item that he truly believed was meant for his keeping. And more on that point quickly before I move on to my next one, there also was the fact Brunkin claimed at trial that Travis must have broken down the door to steal the safe from inside. But then it became shown that Brunkin had previously told police that the door had actually been broken a few days earlier by a man named Eddie. And that goes to my point of calling Brunkin's credibility into question so that a conviction could not hinge on basically his words alone. Now, turning briefly to our second argument, counsel made at least seven grave mistakes that and likely contributed to his conviction, including but not limited to failing to oppose the state's pretrial motions, failing to move to strike jurors who could not be impartial, failing to impeach Brunkin or introduce previous inconsistent statements as substantive evidence, failing to object to inflammatory hearsay statements that implied Travis threatened to kill Brunkin, failing to seek an accomplice witness instruction, failing to object to the blatant misstatement of law in closing, and failing to properly preserve any objections for appeal by neglecting to file a motion for new trial. Now, again, because this is a cumulative argument, none of these errors alone need to be sufficient to necessitate remand. However, there's a few I would like to focus on, particularly the misrepresentation of the elements of residential burglary and closing, because no curative instruction was given to correct this misstatement, so it's impossible to know whether jurors, in fact, found Travis guilty based on this misstatement. There's also the fact that Travis had Brunkin's credit card, as we deduced earlier, but that was entirely irrelevant as to whether he had permission to take the safe and should not have been able to come about at trial. And per Strickland, a defendant need not show that he would have been acquitted if counsel had performed effectively, effectively, but just that a reasonable probability exists that the outcome would have been different. And because Travis made the showing, this court should reverse this conviction and remand for a new trial. Thank you, Your Honors. Questions, Justice Hackett? If I may just have a moment, Attorney Usman, can you give me a couple quick thoughts on the excessive sentence? Is the claim, as you see it, based on an improper consideration of factors or the ultimate result as to the number of years? Certainly, yes. And both are included in the claim, ultimately, that improper factors were considered, and also that because of that, the ultimate number of years that was given is not commensurate with the crime as charged or was found and adduced at trial. Good enough. Thank you. Justice Barberos? I hate when I say just one because then it usually morphs into more than one. But could you give me just a very brief synopsis of what evidence there was of the bias of the two jurors, the victims of burglary? I mean, is it more than just the fact that they admitted to being burglarized, or is there something else? Certainly. So in terms of that argument, really what it comes down to was the very similar experiences to the fact pattern of issue here, as you were saying. And in fact, one of those potential jurors had had very intimate experience with residential burglary in that she herself had been the primary victim. And we relied on U.S. v. Gonzalez, which states that implicit bias hinders a juror's ability to be fair, and that impartial, or my apologies, bias may exist where the juror in question has had some personal experience that is either similar or identical to the fact pattern at issue here. So there certainly was the potential for implicit bias, and that is just one of the many errors that contribute to our cumulative error argument here. Just to follow up on that, when you say that there was a possibility of implicit bias, does implicit bias, does something need to be proven to establish that there's implicit bias? Because if somebody has a bad experience, and in this specific situation, the court asks, okay, you were a victim of burglary, are you going to be able to render a judgment in this case free of any personal feelings because of that experience? If that juror says yes, is implicit bias so strong of a presumption that they still would not be a reliable juror? I understand, Your Honor. So not necessarily, but what we're saying here is that counsel may not be a reliable juror for any reason. So we simply, because of counsel's improper performance here, we don't have enough to determine whether this implicit bias was truly at play and competent counsel would have made that determination. Okay. Thank you. Thank you. Justice Hackett, in light of those questions, do you have any others? No, thank you. Justice Barberis, anything else? No, thanks. All right. Mr. Yesman, you will have five minutes at the conclusion of Mr. Bruce's argument for rebuttal or reply. Mr. Bruce, on behalf of the state. Thank you, Your Honor. May it please the court. Counsel, the victim saw a defendant stealing his safe. So I'm taking it out of his home, taking it into a truck, and nearly being hit with that truck as the victim was yelling at them to stop. This is not a close case. Here, the contents of the safe and the victim immediately calling the police forecloses either prejudice or a claim of insufficient evidence. Defendant took the victim's safe from the victim's address. He immediately ripped the door off with an angle grinder less than 40 minutes after taking it. There were valuable, sensitive, and unique contents within the safe. Again, the victim called 9-1-1 as soon as possible after defendants took it. When the police arrived, defendant was taken into custody, walking away from a secondary location where he left the contents in multiple places. Defendant owned the backpack containing contents from the safe inside. None of those statements are in dispute. In fact, many of them come from defendant's own mouth. Based on that evidence, which is not speculative, it is not borderline, it is overwhelming evidence of his guilt, which includes his intent to steal from the victim, and which includes both the victim and the driver's testimony that the safe came from inside the house. This is even before getting into all the circumstantial aspects of that evidence. As such, defendant's claims under Issues 1 and 2 fail. While the people rest on the brief details of Issue 2, defendant's omnibus ineffectiveness claims to re-litigate his trial in hindsight must be rejected. The overall weight of the evidence and literal incredibility of the defense theory, which, to counsel's credit, defendant's own statements trapped him into, those were insurmountable. And counsel is not required to fashion a bulletproof defense when he has a case that cannot be won. Based on these arguments, the people will focus on the footage of the victim describing how easily his door could be forced, the prosecutor's closing argument providing an accurate statement of the law, as well as any matters this court would like to discuss, and with any remaining time reviewing the sentencing factors where the court do not abuse its discretion. Let me ask you one question before you get started on that. You briefly mentioned the fact, kind of a timeline of when the victim called the police, police showed up, how quickly the safe was opened with an angle grinder, and the backpack contents that Mr. Travis had on his person. How soon after the alleged theft or burglary did all that occur? The police got to defendant less than an hour after the call was made. And is that when they found the backpack with the credit cards? Yes, when the police drive up to the location where the backpack was, the backpack was on the porch of the trailer. And part of the people's case was showing that from the time the police arrived, the backpack was never interacted with. That shows that the police arrived, the backpacks there, defendant is trying to walk away and elude the police. And that's when the police apprehended him. Okay. The door is already cut. The contents are not only removed, but separately hidden, where the jewelry and valuables are placed into defendant's own backpack and other specific items, including I believe paperwork are hidden in the bathroom of the unbeknownst to the owner, who was himself functionally hoodwinked into being a participant in this theft. One of the issues with defendants insufficiency argument is several statements I'd like to highlight, which violate the standard of review. That specifically requires that any reasonable juror, if they can find guilt, where all evidence is construed in the light most favorable to the prosecution, and all inferences are weighed in favor of the verdict. Statements that defendant makes, such as tends to establish, not beyond the reach of believability, that her emphasis that defendant was not there, defense counsel was not there to listen to the tone of the witness, all mean defendant loses. If this is a credibility determination, sufficiency standard means that we honor the jury's verdict. When defendant alludes to the evidence being speculative, that is instead defendant's trying to state that no inferences from that evidence may be construed towards the people's case, and they must be under the law. One place where defendant emphasizes the facts is the pre-existing relationship that defendant and the victim had. I'd like to emphasize that that relationship was defendant breaking into the victim's garage, not with permission, being told he was not allowed on that location, banging on his door at 3 a.m., and then after this offense, threatening to kill him. This was not a congenial relationship where defendant was free to take items from the victim. Defendant was harassing the victim and ultimately stole from him. Now, in addition, defendant emphasizes that there's some kind of per se requirement of a photo or video of the safe's position prior to the theft. That has no basis in the law. There is no requirement for certain video evidence. This isn't CSI. We don't find the reflection of footage from a picture on someone's camera. Circumstantial evidence can provide where direct evidence does not. That's true throughout the insufficiency argument where, and again to emphasize, the data retrieval tool, the social security number of the victim's daughter, the debit cards, and other bank account information from the safe, there is no way that this victim is giving that away. That completely undermines any attempt to defend against the charges in this case as presented, and that's why there is no issue with the evidence, and that is why there is no issue with prejudice, even aside from the other evidence. As to the ineffectiveness argument, the representation that defendant received was certainly sufficient in a difficult-to-defend case. Counsel came into the case where his client had already admitted taking the stolen item, and so he relied upon the same theory that defendant submitted to the police, that it was part of the yard sale. It was a bad theory. It was not a winning theory, but counsel was not unreasonable for attempting to pursue it as best he could. And again, the standard in a representation claim is not whether counsel would have done anything different on appeal, whether defendant regrets the strategic choices made, but he must establish no reasonable attorney would do something, and that that affected the outcome or had an impact on the outcome. If reasonable minds can differ, defendant loses. That includes emphasizing matters to the jury. And as to emphasizing matters to the jury, the statements made by the victim on the body-worn camera, which defendant emphasizes, are all about how easy the door is to force. I encourage the court to review the video again, where the victim is describing the nature of the hardware of the door. He's pointing towards the two screws that hold the latch in place and says that it is easy to force that door. He knows the defendant forced it. Look at the damage. And in fact, it had been forced before. That was an example of how easy it was to force the door. That was not an overriding statement that all damage had been unrepaired and present since a few days prior. The defendant is simply speculating that the victim would not fix the door in the intervening time. And moreover, the statements in the body-worn camera would add little weight to any impeachment because they only go to how easily the door could be forced and would add sympathy to the victim in showing that this was not the first time that he had been victimized. As such, it fails to establish an effective representation because it isn't a problem for the victim's testimony. Moreover, it fails the prejudice test. Again, there is direct evidence from the victim about what happened, seeing defendant taking the safe from inside the home. Dunson corroborates the taking of the safe from inside the house. Defendant's entry is well established, and the circumstantial evidence of the contents of the safe show where it was held. Even one of defendant's witnesses corroborated that the safe was stolen and not given. The prosecutor's comments all went to the intent. I'd like to emphasize one comment from the prosecution, quote, with the intent to commit therein the offense of theft. So that's what I have to prove beyond a reasonable doubt, end quote. That is from record page 715. That is at the top of the prosecution's argument, they emphasize that they have to prove that at the very beginning. Analyze in context that shows that the prosecution's argument was appropriate. The remaining questions that are posed to the jury went to defendant's intent and negated his lack of intent by it being part of a yard sale. If I may answer any questions or otherwise have leave to conclude. Justice Barberos? No questions. Justice Hackett? No, thank you. Mr. Bruce, would you like to wrap up your request for relief? If I may, please. The people provided direct evidence that defendant entered the victim's home and removed the victim's safe from it and overwhelming circumstantial evidence of his mental state to steal through an otherwise ludicrous decision to rip the safe door off and conceal its contents before attempting to elude the police. His sentencing was proper and defendant has not established that the court made any error outside of its adoption that an aggravating factor applied to a specific offense. And not the wholesale adoption of the prosecution's argument. As such, the conviction and sentence should be affirmed in this case. Thank you. Okay, thank you for your arguments. Ms. Yusman? Roberta? Thank you, your honors. So first, I would just like to correct a few misstatements of fact. The state indicated that there were a few facts that were completely agreed upon in the record, and these actually were heavily contested throughout trial. One of those being whether or not Brunker actually told Travis to stop when he saw him taking the safe from his home. As Dunson testified, he believed that they had some sort of exchange, but that he was allowed to keep the safe. So this was actually disputed and not as clear as the state makes it out to be. Furthermore, in terms of the state's point that speculation is something that, as far as I can ascertain, sometimes should be engaged in, that actually is opposite to the rule of law here. So in terms of the point that I was making, for Dunson's testimony, Dunson himself testified that he did not believe that Travis was taking anything that did not belong to him. And based on his demeanor at trial, the court concluded that Dunson believed that he did not think that Travis was intending to steal. So the court concluded that. We are not supposed to disturb that conclusion. The fact that the court concluded that that is what Dunson meant to testify is meant to be undisturbed by us and to try to think of something to the contrary is indeed speculative and against the spirit of the law. Furthermore, the state's focus on my colloquial phrasing when answering questions by your honors still does not take away from the fact that my ultimate argument is in two parts. One, that the evidence was strictly insufficient to sustain this conviction. And two, that counsel did provide an effective assistance here. We notably also never argue that there was a per se requirement that there be physical evidence. That is a misstatement of our argument. Rather, we are arguing that the circumstantial evidence here was simply insufficient to sustain a conviction. And then without further physical evidence, it is even more insufficient. So for example, this case essentially hinges on Brunkin's words alone. Dunson himself, even though yes, he said that he saw a safe being taken, he said that he thought it was allowed to be taken the entire time. He said he never had a doubt about that. That was his testimony at trial. And so really we are hinging on Brunkin's testimony alone where he did contradict himself. Also, in terms of Brunkin's statement to police, which is captured on body camera footage, I also would encourage this court to review that body camera footage again, because Brunkin tells police and is in the video clearly attempting to indicate to police that the door had been broken a few days earlier by a man named Eddie. He never makes any sort of statement about having it repaired since then. He points to the brokenness and says essentially that a man named Eddie did this. And it is unreasonable to infer from that that he actually meant to say, oh, a man named Eddie did this, but actually I repaired it after that and then Travis did this. And then finally, briefly in terms of the ineffective assistance of counsel argument that we made, again, I would like to emphasize that this is a cumulative argument. So despite the state's insistence to the contrary, none of these errors on their own need to be sufficient to justify reband. Rather, it is taking a look at the totality of the errors and what they did to Travis's fair trial rights. Notably, the state said here that the prosecution mentioned in closing that they had to prove theft. Yes, that is correct. The prosecution did say that in closing, but what the state left out here is that they then proceeded to define this theft incorrectly and leave out the intent element. So it's one thing to say that you must find that theft occurred. It's another thing entirely to then misdefine the elements of theft, leave out one of the most critical elements being the intent, and then sending the jury to deliberate. There is no way to determine based on that that the jury actually knew the definition that they were supposed to apply in this case. So based on these arguments and the evidence introduced into the record, we ask that this court either finds the evidence insufficient to sustain Travis's conviction, or finds that counsel performed ineffectively and that there must be a reversal and a remand for new trial. Thank you, your honors. All right, Justice Hackett, any questions? No, thank you. Justice Barberis? No, thanks. All right, counsel, thank you for your arguments here today. We appreciate the efforts you have taken in writing the brief and arguing today. This matter will be taken under advisement. We will issue an order in due course.